Bret P. Bryce (#13042)
**BRYCE LAW P.L.L.C.**
140 W. 9000 S., Suite 9
Sandy, Utah 84070
(801) 696-4644
Bret@Bryce.Law

Craig L. Pankratz (#12194)
**LOTUS APPELLATE LAW**
51 W. Center Street #103
Orem, Utah 84057
801.900.5912
craig@lotusappellatelaw.com
Attorneys for Plaintiff Joshua Lee Barnett

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOSHUA LEE BARNETT,<br>Plaintiff,<br><br>v.<br><br>SHERIFF D. CHAD JENSEN, et al.,<br><br>Defendants. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Case No. 1:26-cv-00049-TS-CMR<br><br>Judge Ted Stewart<br><br>Chief Magistrate Judge Cecilia M. Romero |

**INTRODUCTION**

Of the parties that have appeared in this action, only one opposes amendment — and even she agreed in writing to stipulate to it before this opposition was filed. Counsel for the Cache County Sheriff and the individual law-enforcement defendants consented. The School District Defendants responded that although they believe the proposed Second Amended Complaint ("SAC") "does not remedy all the flaws of the First Amended Complaint," they "will

address this in a new motion to dismiss" and "do not oppose Plaintiff's motion." (ECF 46 at 1–2.) And on June 12, 2026, counsel at Jones, Skelton & Hochuli engaged on behalf of Ms. Dunkley wrote to Plaintiff's counsel: "We will stipulate to you amending the First Amended Complaint," following up hours later, "If you can forward a stip to amend the answer, I can review and sign." (Ex. A.) That written commitment was never withdrawn, qualified, or mentioned again. This opposition was filed instead.

The opposition supplies its own answer on the merits. Ms. Dunkley tells the Court that the SAC "fails for the same reason the First Amended Complaint fails" (ECF 47 at 1), that "[t]he deficiency identified in the Motion to Dismiss and Reply persists" (id. at 4), and that granting leave would force her "to re-brief substantially identical legal arguments" on "issues already fully presented" (id. at 10). That is a concession that her futility arguments duplicate her pending Rule 12 motion — and, as shown below, duplication is exactly when judges of this District decline the futility analysis and let the defendant test the operative pleading under Rule 12.

Ms. Dunkley requests that relief herself, in the alternative: that if leave is granted, she and any newly added defendant retain the right to move against the SAC. (ECF 47 at 11.) Plaintiff does not oppose it. The Court should grant leave, deny the pending motions to dismiss (ECF 29, 38) without prejudice, and let Ms. Dunkley file her Rule 12 motion against the pleading it is meant to test.

## ARGUMENT

### I. Futility Arguments That Duplicate a Pending Rule 12 Motion Are Resolved by Granting Leave, Not by Litigating a Disguised Motion to Dismiss Inside Rule 15.

Rule 15(a)(2) directs that leave be given "freely . . . when justice so requires," and futility is a discretionary ground for denial, not a mandatory one. Foman v. Davis, 371 U.S. 178, 182 (1962). Where a defendant's futility arguments merely restate a pending motion to dismiss,

judges of this District — including the Chief Magistrate Judge assigned to this case — decline to conduct the futility analysis within Rule 15 briefing and instead grant leave, deny the pending motions without prejudice, and permit renewed Rule 12 motions directed at the operative pleading. Wilson v. BuyPD, No. 2:20-cv-00558-DBB-CMR, ECF No. 176 (D. Utah Jan. 13, 2025) (Romero, M.J.); Wilson v. Millcreek Com. Props., No. 2:24-cv-00624-TC-CMR, ECF No. 95 (D. Utah Apr. 7, 2025) (Campbell, J.) (holding futility arguments "will be better addressed in renewed motions to dismiss" where the "oppositions to amendment largely reiterate arguments from their now-pending motions to dismiss," and that any re-briefing prejudice is "minimal" because "in arguing futility in opposition to this motion, most of these Defendants' work is already complete"). As the BuyPD order explains, "[p]articularly where futility arguments are duplicative of arguments raised in a motion to dismiss," conducting the futility analysis on a motion to amend "plac[es] the cart before the horse," and "[r]ather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." Wilson v. BuyPD, supra (quoting Complete Merch. Sols., LLC v. Fed. Trade Comm'n, No. 2:19-cv-00963-HCN-DAO, 2020 WL 4192294, at *3 (D. Utah July 21, 2020)).

This opposition is the paradigm case for that practice. By Ms. Dunkley's own account, her futility argument is her motion to dismiss: the SAC "fails for the same reason" as the FAC, the same "deficiency . . . persists," and granting leave would require briefing "substantially identical legal arguments." (ECF 47 at 1, 4, 10.) Every party contemplates the same course: the School District Defendants will raise their objections "in a new motion to dismiss" (ECF 46 at 2), and Ms. Dunkley asks in the alternative to preserve the same right (ECF 47 at 11). No other Foman ground exists: no defendant has filed an answer, no scheduling order has been entered,

and no discovery has occurred — the same pre-answer, pre-discovery posture in which both Millcreek and BuyPD granted leave. Undue prejudice exists only "when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" Minter v. Prime Equip. Co., 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting Patton v. Guyer, 443 F.2d 79, 86 (10th Cir. 1971)). The opposition identifies no such effect — the SAC arises from the same events her pending motion already briefs.

**II. Reynolds — the Opposition's Only Contrary Authority — Supports Plaintiff.**

The opposition's sole authority for denying leave in this posture is Reynolds v. Utah Highway Patrol, No. 2:23-cv-00034-DAK-CMR (D. Utah Aug. 4, 2025). The opposition's parenthetical presents Reynolds as authority to deny leave while omitting the grounds of decision — grounds that cut against her. There, Chief Magistrate Judge Romero recommended granting leave to amend even while simultaneously recommending dismissal of the operative complaint. Leave was ultimately denied for reasons with no analog here: the plaintiff filed no separate motion for leave and attached no proposed amended pleading, after multiple prior opportunities to amend following full dispositive briefing. Plaintiff here did what the Reynolds plaintiff did not: he filed a separate motion and attached the complete proposed SAC and a redline under DUCivR 15-1 — as Ms. Dunkley concedes. (ECF 47 at 11.) And this is Plaintiff's first contested amendment; the First Amended Complaint was filed as of right under Rule 15(a)(1). There has been no "repeated failure to cure" because there has been no prior Court-granted opportunity to cure at all.

**III. The Opposition Argues Facts Without Evidence and Repeatedly Mischaracterizes the Pleading It Asks the Court to Evaluate.**

Futility is measured by the Rule 12(b)(6) standard, under which the SAC's allegations are accepted as true and no evidence is weighed. Brereton v. Bountiful City Corp., 434 F.3d 1213,

1219 (10th Cir. 2006). The opposition invokes that standard and then violates it: it repeatedly asserts its own facts — unsupported by any affidavit, declaration, or record citation — and asks the Court to credit counsel's narrative over the pleaded allegations. Three examples suffice; in each, the opposition's description of the SAC is demonstrably wrong.

First, the opposition tells the Court that the body camera footage captures "silence from Ms. Dunkley" and that "Ms. Dunkley does not speak in the footage." (ECF 47 at 5.) The SAC alleges the opposite: while deputies discussed arresting Mr. Barnett, characterized his "behavior patterns," and contemplated a lethality assessment, Ms. Dunkley joined the exchange, laughingly remarking that her husband was "in for a lot" by marrying her — in the presence and hearing of the parties' minor child — and the deputies exchanged fist bumps with the Dunkleys. (SAC ¶ 50; see also SAC, Introduction.) At this stage the allegations control, and they describe a complainant socially embedded in the arrest decision, not a silent bystander.

Second, the opposition asserts at page 8 that "[t]he evidence destruction allegations target Ryan Dunkley (Proposed Compl. ¶ 105), not Ms. Dunkley," and then asserts at page 10 that the same paragraph alleges only that "one of them 'must have' deleted messages." Both characterizations are wrong, and they contradict each other. Paragraph 105 names Ms. Dunkley specifically: it alleges that "Ms. Dunkley had accessed M.B.'s phone and deleted the threatening text messages," and that Mr. Barnett's precautionary screenshots then disappeared from the phone as well. (SAC ¶ 105.) The phrase "must have," which the opposition places in quotation marks and attributes to ¶ 105, appears nowhere in that paragraph. The willful-act element of abuse of process that the opposition says is unpled, Hatch v. Davis, 2006 UT 44, ¶ 36, 147 P.3d 383, is pled — in the very paragraph the opposition cites.

Third, the opposition declares that Ms. Dunkley "did not initiate the prosecution" because she "did not sign a charging document or direct any prosecutor to file charges." (ECF 47 at 7–8.) Those are factual assertions offered without declaration — precisely what the opposition elsewhere insists the Court may not consider. They are also legally beside the point: Utah law requires no signature, extending liability to one who "initiated or procured the initiation of criminal proceedings." Gilbert v. Ince, 1999 UT 65, ¶ 18, 981 P.2d 841. The SAC alleges that Ms. Dunkley summoned law enforcement (SAC ¶ 58); that she reported Mr. Barnett had "shoved" the child — an account the security video reviewed by the responding deputy contradicted (SAC ¶¶ 58–59, 109); that the resulting Providence City information rests on her account and names her as its first-listed witness; and that the identical sequence — custody petition, protective order, criminal charges — was deployed in 2021 and repeated in 2025 (SAC ¶¶ 30–31). Whether those allegations establish procurement is a merits question for Rule 12 or the factfinder, not for counsel's unsworn narrative on a Rule 15 opposition.

The opposition's reliance on Dennis v. Sparks, 449 U.S. 24 (1980), inverts its holding. Dennis held that private persons "jointly engaged with state officials in the challenged action" act under color of state law; a private party is liable as a "willful participant in joint action with the State or its agents." Id. at 27–28. Dennis itself sustained § 1983 conspiracy claims against the private defendants, affirming the reinstatement of those claims after the district court had dismissed them — the portion of the decision the opposition's selective quotation omits. The SAC pleads that joint action from the officers' own records: Deputy Maughan personally coached Ms. Dunkley to seek a protective order and directed her to CAPSA (SAC ¶¶ 17, 96, 161); the deputies admitted advising her to seek the order (SAC ¶ 154(c)) — and Ms. Dunkley herself acknowledged under oath in the protective-order proceedings that law enforcement

directed her to seek it; she provided screenshot evidence to deputies with a request that Mr. Barnett be monitored (SAC ¶ 154(b)); officers coordinated with the Dunkleys pre-arrest over who would take the children "when Josh is arrested" (SAC ¶¶ 45–46); and Maughan conducted the post-arrest Lethality Assessment with her and entered it into UCJIS (SAC ¶ 96). These are not allegations of a citizen who "called the police and was present when they arrived" (ECF 47 at 6); they are the overt acts Dennis contemplates. A protective order sought at law enforcement's direction, then deployed as the predicate for further criminal process, is joint action, not "mere resort to the courts."

## IV. The Amendment Is Neither Futile nor Prejudicial as to Ryan Dunkley.

Ryan Dunkley's on-camera statement — made before any arrest, that the arrest "will be good for" the custody dispute (SAC ¶ 42) — is pleaded verbatim; its meaning is for the factfinder, not for counsel's gloss. The claimed "prejudice" from the marital communications privilege is not Foman prejudice: the privilege is an evidentiary objection asserted in discovery under Fed. R. Evid. 501, and it belongs to the Dunkleys whether or not Ryan is a party — joining him changes nothing about its availability. If joining a defendant's spouse were "undue prejudice," no spouse could ever be named as a co-defendant. The opposition cites no authority so holding, because there is none.

## V. The Conferral Record Refutes the Opposition's Equities Narrative.

The opposition suggests Plaintiff sought Ms. Dunkley's position without giving counsel a meaningful opportunity to evaluate the amendment. (ECF 47 at 11.) The documented record is otherwise. Plaintiff's counsel emailed Ms. Macanas and Mr. Hamilton on May 15, left a voicemail on May 19, and emailed again on May 19 — with no response of any kind. The SAC and redline have been on the docket since filing (D.E. 42), and the opposition quotes the SAC by

paragraph — confirming counsel evaluated exactly the document DUCivR 15-1 requires. Then, on June 12, 2026, counsel at Jones, Skelton & Hochuli engaged on behalf of Ms. Dunkley confirmed in writing: "We will stipulate to you amending the First Amended Complaint," and, hours later, "If you can forward a stip to amend the answer, I can review and sign." (Ex. A.) Counsel's request for the signature document confirms she had everything needed to consent — which alone refutes the opposition's claim that counsel "cannot meaningfully evaluate an amendment it has not seen." (ECF 47 at 11.) Days later, Plaintiff filed this motion, placing the identical question — with the complete SAC and redline attached — before every party and the Court; a motion for leave asks for nothing the promised stipulation would not have given. In the weeks that followed, no counsel for Ms. Dunkley withdrew the written commitment, asked a single question, or communicated at all (and never have). Instead, on the final day of the response period, Ms. Dunkley filed this opposition, taking the position her own counsel had disclaimed in writing. A party whose counsel agreed in writing to stipulate to the amendment cannot credibly claim the equities favor denying it.

**VI. Plaintiff Does Not Concede the Opposition's Remaining Arguments, Which Belong in Rule 12 Briefing.**

Plaintiff does not concede, and expressly reserves, every argument the opposition raises that this reply does not brief — including its characterization of the "coaching" and therapy allegations (ECF 47 at 7), its IIED-threshold argument (id. at 8), and its Younger and Heck contentions (id. at 9). Each is drawn from the pending Motion to Dismiss — confirming the duplication addressed in Part I — and will be answered in full in Rule 12 briefing. Two observations suffice. First, these arguments recharacterize the pleading rather than accept it: the SAC alleges Ms. Dunkley directed a child to report her father to law enforcement as part of a coordinated course of conduct (SAC ¶¶ 54, 104, 158), and whether that showing succeeds is a

merits question. Second, the opposition's own Younger argument concedes that the remedy, at most, is a stay of the affected claims, not dismissal. (ECF 47 at 9, citing Deakins v. Monaghan, 484 U.S. 193, 202 (1988).) A doctrine whose maximum effect is a stay of certain claims cannot support denying leave to file the pleading containing them.

**CONCLUSION**

The Court should grant Plaintiff leave to file the Second Amended Complaint, direct that it be deemed filed, and deny the pending motions to dismiss (ECF 29, 38) without prejudice to renewed motions directed at the operative pleading — the course the School District Defendants expressly contemplate (ECF 46), that Ms. Dunkley requests in the alternative (ECF 47 at 11), and that her own counsel agreed in writing to stipulate to (Ex. A).

Pursuant to DUCivR 7-1(a)(4), counsel certifies that this reply contains 2500 words, exclusive of the caption, signature block, and this certification, and complies with the 2,500-word limit.

Dated: July 15, 2026

Respectfully submitted,

<u>/s/ Bret P. Bryce</u>
Bret P. Bryce
Craig L. Pankratz
Attorneys for Plaintiff Joshua Lee Barnett